UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.                                           Case No. 25-CR-00198

ANDREW STANTON,

    *Defendant.*

**DEFENDANT'S CONSOLIDATED BRIEF IN SUPPORT OF
MOTIONS TO SUPPRESS AND DISMISS**

Defendant Andrew Stanton moves to dismiss Count 2 because his speech is constitutionally protected. U.S. CONST. AMEND. I. He also moves the Court to suppress evidence unreasonably seized under a warrant. U.S. CONST. AMEND. IV.

## I. INTRODUCTION

Federal Agent J.Z. texted Stanton after Stanton made inflammatory posts and sent concerning private messages on TikTok. He told Stanton he was a Customs and Border Protection supervisor and asked Stanton to call him. Stanton doubted him. J.Z. continued texting Stanton, trying to reach him. Stanton responded, making clear his disdain for the federal government while also continuing to doubt J.Z. was a real federal agent.

J.Z. concluded that, to that point, Stanton's posts and messages were constitutionally protected free speech. J.Z. gave up on meeting Stanton when Stanton texted him:

    lol. I'm gonna need your full name and badge or ID #

    I need to speak with you at my residence. Good luck with this scam homie

> If there isn't a verification of who you are, I'm gonna take this information as seriously as Charlie Kirk took death threats.
>
> Come by, if you are who you say you are, I'm not gonna pull out the pole. But if you are not, we can figure out what castle doctrine is together
>
> If you're actually a fed, which at this point I'm for sure doubting. I hope it's and "illegal" that drops you, bury you, and piss on your grave

Exhibit A (excerpted Government Bates) at 000733. After receiving that message, J.Z. told other federal agents, "Okay, so I'm all done with this guy. I'm blocking and not engaging further." *Id.* at 000732.

Stanton, however, continued to post on TikTok. After several posts discussing political violence and referencing J.Z., the government sought a search warrant. Ex. A at 001496–001531.

The initial messages to J.Z. and the later TikTok posts led the government to arrest and charge Stanton. ECF 1 (criminal complaint) at 5–13. A grand jury indicted Stanton on three counts for threatening a federal official, transmitting a threat in interstate commerce, and stalking with the intent to injure, harass, or intimidate. ECF 7 (indictment); *see* 18 U.S.C. §§ 115(a)(1)(B), 875(c), *and* 2261A(2)(B).

Stanton now moves to dismiss Count 2 and suppress evidence seized under the search warrant. In Count 2, the government alleged specifically that the following post was a true threat: "If ICE shows up to your neighborhood—I'm sorry, I'm just gonna say it. It's time to start fucking shooting at them. If they show up to your neighborhood, and I'm talking to you, Border Patrol Officer [J.Z.], it's time we start shooting ya'll." ECF 7 at 2 (alteration in original). But that statement is not a true threat. Nor is it incitement. Because

the statement is constitutionally protected under the First Amendment, the Court should dismiss Count 2.

The Court should suppress evidence obtained from the warrant for two reasons. First, the agent who sought the warrant, Special Agent Joshua Eagen, omitted material information from the warrant application. If that information had been included, the warrant would not have issued. Thus, all evidence obtained under the warrant should be suppressed. *Franks v. Delaware*, 438 U.S. 154 (1978).

Second, even if the warrant was properly supported by probable cause, it was overbroad. In Agent Eagen's affidavit, he said there was probable cause to believe that Stanton threatened a federal agent under 18 U.S.C. § 115(a)(1)(B). The messages supporting probable cause submitted by Eagen occurred between August 26, 2025, and September 10, 2025. Ex. A at 001504–001510. Eagen also said that Stanton had posted videos or images showing he had tactical gear, a long gun, and rifle magazines between June 7, 2025, and September 11, 2025. *Id.* at 001508. But the warrant was not limited to that information. It allowed agents to search Stanton's home, garage, and car. *Id.* at 001496. And it allowed them to search for and seize any guns or tactical gear (legally possessed or not); any records (digital or physical); "evidence indicative of preparation" of threatening an officer; any digital device; and any storage medium or computer (unconstrained in any way). This was a general warrant. *Groh v. Ramirez*, 540 U.S. 551 (2004).

## II. ANALYSIS

Stanton did not threaten to shoot Officer J.Z., so his statements were not a true threat. Nor did he incite others to *imminent* lawlessness. His speech is therefore constitutionally

protected, and Count 2 must be dismissed. Additionally, Stanton did not think Officer J.Z. was a real person. Had Agent Eagen included this information in the warrant application, the warrant would not have issued. And even if there were probable cause to believe Stanton threatened a federal agent, the warrant was overbroad.

## A. First Amendment: Dismissal of Count 2

Stanton's alleged speech in Count 2 is constitutionally protected. ECF 7 at 2; U.S. CONST. AMEND. I. The indictment alleges Stanton knowingly and recklessly made a true threat against J.Z. and others. *Id.* It also makes specific what the alleged true threat was:

> If ICE shows up to your neighborhood—I'm sorry, I'm just gonna say it. It's time to start fucking shooting at them. If they show up to your neighborhood, and I'm talking to you, Border Patrol Officer [J.Z.], it's time we start shooting ya'll.

*Id.* (alteration in original). When the government adds specific detail to an indictment, it becomes essential to the charged crime. *United States v. Coleman*, 138 F.4th 489, 499 (7th Cir. 2025).

No doubt, Stanton's speech was offensive. But that doesn't mean the government can punish it. Unpopular speech receives heightened constitutional protection because it is the speech that most needs protection. "First Amendment vigilance is especially important when speech is disturbing, frightening, or painful, because the undesirability of such speech will place a heavy thumb in favor of silencing it." *Counterman v. Colorado*, 600 U.S. 66, 87 (2023).

All speech is constitutionally protected unless it falls into a category of unprotected speech. *United States v. Stevens*, 559 U.S. 460, 468 (2010). "These historic and traditional categories [are] long familiar to the bar." *Id.* (internal marks and source omitted). Relevant here are true threats and incitement. *Counterman*, 600 U.S. at 73–74.

The speech in Count 2 is not a "true threat." This is, instead, the government's attempt to allege incitement. Incitement is a call for imminent lawlessness. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Conversely, "[t]rue threats are 'serious expressions' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74, quoting *Black*, 538 U.S. at 359.

As one court succinctly explained, "In contrast to a true threat, which conveys the speaker's own intent either to perpetrate violence or to use his authority to direct others to do so, inciting words exhort others to do violence without signaling the speaker's intent to act." *State v. Carroll*, 196 A.3d 106, 119 (N.J. App. Div. 2018).

Stanton did not say he was going to shoot J.Z. Instead, speaking openly online to no one in particular, Stanton advocated for shooting ICE agents who come to people's neighborhoods.

So, Count Two of the indictment must be dismissed for two reasons.

First, incitement, to be prosecuted, must be intentional. *Counterman*, 600 U.S. at 81. Recklessness is not enough. In *Counterman*, the Court held that a speaker need not *intend* that his statement be perceived as a true threat; recklessness is enough. *Id.* at 82. It contrasted its holding to incitement: "It is true that our incitement decisions demand more—but the reason for that demand is not present here. When incitement is at issue, we have spoken in terms of specific intent, presumably equivalent to purpose or knowledge." *Id.* at 81, citing *Hess v. Indiana*, 414 U.S. 105, 109 (1973). Count 2 here alleges recklessness. That's not enough, and it should be dismissed.

And second, incitement, to be prosecuted, must be imminent. *Hess*, 414 U.S. at 108–09. As the *Hess* Court explained: "Under our decisions, 'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing *imminent lawless action* and is likely to incite or produce such action.'" *Id.* at 108 (emphasis added), quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Advocacy for lawless action at some uncertain future date is not enough. Thus, the Supreme Court has held that these statements were constitutionally protected:

- "We're not a revengent organization, but if our President, our Congress, our Supreme Court, continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." *Brandenburg*, 395 U.S. at 446.
- An organizer's statement to a group that "any uncle toms who broke the boycott would have their necks broken." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 n.28 (1982) (internal marks omitted).

On its face, this speech in Count 2 does not call for *imminent* action. "[A]t worst, it amounted to nothing more than advocacy of illegal action at some indefinite future time. This is not sufficient to permit the [government] to punish [Stanton's] speech." *Hess*, 414 U.S. at 108.

Stanton's speech in Count 2 does not fall into a category of unprotected speech. It's not a true threat. It's not incitement. The Court should dismiss Count 2.

### B. Fourth Amendment: Suppression

Special Agent Eagen applied for and obtained a warrant to search Stanton's home, garage, and car. Ex. A at 001502. He averred that there was probable cause to believe Stanton

6
Case 2:25-cr-00198-PP-WED    Filed 01/20/26    Page 6 of 19    Document 24

violated 18 U.S.C. § 115(a)(1)(B), threatening to assault or kill a government official because of Stanton's speech, in texts to J.Z. and in TikTok posts. *Id.*; *id.* at 1504–1510. The warrant violated Stanton's Fourth Amendment rights in two ways. First, Eagen's application was unreasonable because it omitted information that would've defeated probable cause. And second, the warrant wasn't sufficiently particularized.

The purpose of the Fourth Amendment is to prevent general warrants. "[T]he Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403 (2014). Thus, the Fourth Amendment has two important requirements: probable cause and particularity. A warrant can issue only upon a sworn showing of probable cause that a particular piece of evidence will be found in a particular location:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND IV. These protections are heightened when the government seeks to search information rather than seize contraband. In searches of papers and conversations, "responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy." *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976).

1. ***Franks* and probable cause**

"Search warrants must be supported by probable cause, which exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*United States v. Felton*, 159 F.4th 1128, 1133 (7th Cir. 2025) (marks and quoted source omitted).

Under *Franks*, "a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information to the issuing judge." *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013), referring to *Franks*, 438 U.S. 154. "*Franks* also applies to deliberately or recklessly deceptive omissions." *Id.*

Here, Agent Eagen deliberately or recklessly omitted facts showing that Stanton did not believe J.Z. was a real government agent. If those omissions were included in the search warrant application, probable cause would've been absent. Thus, Stanton is entitled to an evidentiary hearing. *Id.* "At the hearing stage, the court reconsiders the affidavit, this time . . . incorporating any such omitted material facts, and determines whether probable cause existed nevertheless." *Id.* at 509.

Examine the probable cause portion of Agent Eagen's application. Ex. A at 1504–1510. Query whether any of it shows Stanton engaged in unconstitutional speech. If it does, which Stanton does not concede, it's just barely.

According to Agent Eagen, in late August 2025, the government became aware of Stanton after he sought information about members of the Israeli Defense Force in Illinois and Wisconsin. *Id.* at 1504. Stanton also advocated for violence against politicians and federal agents, but not for *imminent* violence. *Id.* at 1505; *see Hess*, 414 U.S. at 108–09.

In September, agents began trying to contact Stanton. Ex. A at 1505–1506. Also in September, Stanton advocated for mass shootings against federal agents while referencing the Charlie Kirk assassination. *Id.* at 1506. Again, he did not call for imminent violence. *Id.*

In mid-September, J.Z. (identified in the application as VICTIM 1) texted Stanton. *Id.* The application details some of the messages between the two, in which Stanton repeatedly expresses disdain for federal agents and references violence. *Id.* The worst examples include Stanton imploring J.Z. to hang himself in his children's room and expressing hope that an illegal immigrant would kill him. *Id.* at 1506–1507. But again, none of the statements advocate for imminent lawlessness or contain threats that Stanton is going to hurt J.Z.

Stanton did not believe J.Z. was a real federal agent. Agent Eagen's application contains only one piece of this: "If you're actually a fed, which at this point I'm for sure doubting . . ." *Id.* at 1507. But there was more. The messages are Ex. A at 000936–000949. Stanton immediately doubted J.Z.'s existence, asking, "And I'm just supposed to trust a random number?" *Id.* at 0000937. Stanton also asked how J.Z. knew him and whether he was "Deborah." *Id.* at 000942. He reiterated, "And if you aren't real, Deborah, a friend of Leah, Leah herself . . . Can I just send these images[?] *Id.* at 000946. Stanton repeatedly questioned whether J.Z. was real, asking for "a verification of who you are," and saying:

"Come by if you are who you say you are, . . ."

"If you're actually a fed, which at this point I'm for sure doubting. . ."

"Ok federal agent. Sitting here typing a book isn't very federal agent of you. . ."

*Id.* at 000946–000949. At this point, J.Z. blocked Stanton, telling other federal agents that he wasn't going engage with Stanton further. *Id.* at 000732. That might have been the end of it.

But then in early October, Stanton posted on TikTok the statement in Count 2. Ex. A at 001507. Again, Stanton said in the video: "If ICE shows up to your neighborhood—I'm sorry, I'm just gonna say it. It's time to start fucking shooting at them. If they show up to

your neighborhood, and I'm talking to you, Border Patrol Officer [J.Z.], it's time we start shooting ya'll." *Id.* at 001507–001508.

Magistrate Judge Dries found probable cause and issued the warrant. *Id.* at 001496. But with the added context, he would not have. As discussed above, Stanton's speech is constitutionally protected. But any doubts are erased by Stanton's not believing he had been texting a federal agent. For speech to be criminal, it must be "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminello v. Chicago*, 337 U.S. 1, 4 (1949). In the true threat context, "'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Counterman*, 600 U.S. at 74, quoting *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

Neither Stanton nor J.Z. believed Stanton was threatening J.Z. because they both knew that Stanton didn't think J.Z. was real. The full picture defeated probable cause in the warrant application. And Agent Eagen's omission of the full picture led to the warrant being issued in error. The Court should hold an evidentiary hearing to determine whether probable cause existed with the added statements. *McMurtrey*, 704 F.3d at 508–09.

2. **Particularity**

Even if the Court finds that Agent Eagen's omissions were immaterial, the search warrant was insufficiently particularized. Based on Stanton's speech over less than two months, agents searched Stanton's home, car, and garage for all records, including non-

digital ones, guns, and computers. The computers, including Stanton's phone, were searched completely without limitation.

The Fourth Amendment requires that warrants particularly describe where and what an officer searches for. A warrant is insufficiently particular if it is overbroad or authorizes searches without a nexus to criminal activity. A warrant is overbroad if it allows "officers to search for items that are unlikely to yield evidence of the crime." *United States v. Vizcarra-Millan*, 15 F.4th 473, 502 (7th Cir. 2021). Additionally, there must be a nexus between criminal activity and the things to be searched for and seized. When a warrant seeks "mere evidence" of a crime instead of contraband, fruit of a crime, or an instrumentality of a crime, the warrant must "contain probable cause that the evidence will 'aid in a particular apprehension or conviction.'" *United States v. Roland*, 60 F.4th 1061, 1065 (7th Cir. 2023), parenthetically quoting *Warden v. Hayden*, 387 U.S. 294, 306–07 (1967).

The particularity requirement is important, especially in this context. It was the innovation of the Fourth Amendment, in response in large part to the famous *Entick* case. *Entick v. Carrington and Three Other King's Messengers*, 95 Eng. Rep. 807, 817, 19 How. St. Tr. 1029 (C.P. 1765); *Boyd v. United States*, 116 U.S. 616, 626–27 (1886) (describing the *Entick* result as "one of the landmarks of English liberty").

There was probable cause to believe Entick was publishing seditious pamphlets. *Boyd*, 116 U.S. at 626–27; *Stanford v. Texas*, 379 U.S. 476, 483–84 (1965). That wasn't the problem. The problem was what the Crown did with that probable cause. It issued a warrant against him, authorizing his arrest and the seizure of his "books and papers." *Stanford*, 379 U.S. at 483. Officials executing the warrant ransacked Entick's home and seized

all of his books and papers. *Stanford*, 379 U.S. at 483. The Court found the warrant was unlawful, concluding:

> His house is rifled; his most valuable secrets are taken out of his possession, before the paper for which he is charged is found to be criminal by any competent jurisdiction, and before he is convicted either of writing, publishing, or being concerned in the paper.

*Id*. at 484, quoting *Entick*, 19 How. St. Tr. at 1064.

John Adams believed the *Entick* case was the impetus of the revolution, "Then and there was the first scene of the first act of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born." Clancy, Thomas K., *The Framers' Intent: John Adams, His Era, and the Fourth Amendment*, 86 IND. L. J. 979, 1005 (2011).

At bottom, the Fourth Amendment prohibits "a general exploratory rummaging through one's belongings." *United States v. Mann*, 592 F.3d 779, 782 (7th Cir. 2010). The warrant here was overbroad and lacked nexus to the alleged criminal conduct. The Court should therefore exclude all evidence from the unparticularized portions of the warrant.

The warrant here was a general warrant. The warrant authorized searching for and seizing the property in Attachment B. Ex. A at 001496. The warrant sought evidence "in whatever form and however stored" the evidence mentioned in the warrant application "*including, but not limited to*:

**ATTACHMENT B**

Property to be seized by the Government

1. The items, information, and data to be seized from the locations described in Attachment A are fruits, evidence, contraband, and/or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 115(a)(1)(B), as described in the search warrant affidavit, including, but not limited to:

    a. Firearms, ammunition, magazines, and/or tactical gear and body armor (armored plates and/or armored plate carriers) appearing to be in STANTON's possession, custody, or control;

    b. Any and all notes, documents, records, or correspondence, in any format and medium (including but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the subject offenses;

    c. Evidence indicative of preparation in furtherance of those offenses;

    d. Evidence of motive, intent, or knowledge of those offenses;

    e. Digital devices or storage mediums used as means to commit the violations describe above, to include but not be limited to, cellular telephones, any computers or tablets located on the premises to be searched, and any digital device or storage media containing records relating to the subject offenses;

    f. For any storage medium whose seizure is otherwise authorized by this warrant, and any storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "computer"):

        i. evidence of who used, owned, or controlled the computer at the time the things described in this warrant were created, edited, or deleted, such as

logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

ii. evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the lack of such malicious software;

iv. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

v. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

vi. evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

vii. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

viii. evidence of the times the computer was used;

ix. passwords, encryption keys, and other access devices that may be necessary to access the computer;

x. documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

xi. records of or information about Internet Protocol addresses used by the computer;

xii. records of or information about the computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

xiii. contextual information necessary to understand the evidence described in this attachment.

Ex. A at 001499–001501.

The warrant was not further limited. In paragraph 19 of the application, Agent Eagen writes that he's seeking "permission to search for records" in Stanton's home or near him, "in whatever form they might be found." Ex. A at 001511. "Record" is not defined in the application like other terms are in paragraph 20. *Id.* at 001511–001516. In paragraph 21, Eagen says he has probable cause to believe that if a device is found, "those records will be stored on that computer or storage medium, . . ." *Id.* at 001516. Again, there is no definition of record nor any particularity as to what type of records Eagen is looking for. Paragraph 22 refers to Attachment B and says that Eagen is not just looking for direct evidence of the crime, "but also for" evidence about the use of the devices. *Id.* at 001518. Attachment B, in turn, refers back to the search warrant application. There is no definition of record, no explanation of why any type of record might be relevant, and no nexus between the crime and any type of record or records generally.

Agents seized a cellphone, two tablets, a laptop, bullet magazines, a tactical vest, a notebook, a hard drive, a USB drive, ammunition, a book written by Joseph Stalin, and a

gun. *Id.* at 001660. Again, the searches of his devices were not limited at all. Stanton has received documents and forensic copies of devices amounting to over 750 GB of data.

Almost none of this is "evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; or property designed for use, intended for use, or used in committing a crime." *Id.* at 001502. Agent Eagen did not assert that Stanton is prohibited from possessing firearms or ammunition. And the only thing used in committing the alleged crime of threatening an official was Stanton's phone. What was the probable cause to believe Stanton's physical documents would contain evidence of a crime? What was the probable cause to believe that Stanton's call logs, GPS data, or address books would contain evidence of a crime? What was the probable cause to believe that data from earlier than the Spring of 2025 would contain evidence of a crime?

Agent Eagen accused Stanton of a speech crime. Even if the Court concludes it may have been unprotected speech, it was speech nevertheless—just like Entick's seditious papers. The officers searched his entire home, garage, car, and phone. For what? The search warrant application described statements over a few-month period. The warrant is lacking a nexus between the alleged crime and the broad evidence it authorizes searching for.

Nothing suggested there would be evidence of a crime in the years back on Stanton's phone. "Particularity is of substantial importance in the context of cell phones (and other, similar electronic devices) because, with all they contain and all they may reveal, they hold for many Americans the privacies of life." *Socha v. City of Joliet, Ill.*, 107 F.4th 700, 709 (7th Cir. 2024) (cleaned up), quoting *Riley v. California*, 573 U.S. 373, 393 (2014). Thus, the Seventh Circuit has "remind[ed] police of their obligation to be specific and explain why there is

probable cause to search every part of a cell phone they seek to search." *Id.* That obligation was not discharged here.

A good example is *Winn*. There, the district court found a warrant to be overbroad because it practically authorized the seizure of "' "any and all files' that constituted evidence of disorderly conduct.'" *United States v. Winn*, 79 F. Supp. 3d 904, 918 (S.D. Ill. 2015). The district court concluded that the "major, overriding problem with the description of the object of the search—'any or all files'—is that the police did not have probable cause to believe that *everything* on the phone was evidence of the crime of public indecency." *Id.* at 919.

The same is true here. As written, the search warrant allows for a search of every "record," physical or digital, found in Stanton's home, car, or garage. "The bottom line is that if [Agent Eagen] wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to [Stanton's] criminal activity, and he did not do so." *Id.* at 920.

*Bishop* proves the rule. Bishop was suspected of shooting someone during a drug transaction. *United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018). The Seventh Circuit reviewed a warrant that allowed law enforcement to search an entire phone for any evidence of criminal recklessness or drug dealing. *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018). The Seventh Circuit upheld the warrant, observing, "the police did not know where on his phone Bishop kept his drug ledgers and gun videos—and, if he had told them, they would have been fools to believe him, for criminals often try to throw investigators off the trail." *Id.* at 338. But the holding was based on the suspected crime. The ultimate rule

was: "It is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation." *Id.*, citing *Archer v. Chisholm*, 870 F.3d 603, 616 (7th Cir. 2017); *United States v. Hall*, 142 F.3d 988, 996–97 (7th Cir. 1998); Wayne R. LaFave, 2 Search & Seizure § 4.6(d) (5th ed. 2012 & Supp. 2018).

Or as the Seventh Circuit later clarified, "Another limit on the scope of a warrant is the crime under investigation, which 'cabins the things being looked for' to items that could be evidence of that crime." *Socha*, 107 F.4th 700, quoting *Bishop*, 910 F.3d at 337.

This is not a drug-dealing case. The crime alleged in the warrant application was threatening a government official. Agent Eagen was required to explain why there was probable cause to believe there was evidence of threatening a government official in "every part of a cell phone [he sought] to search." *Id.* at 709.

Nor did anything suggest there would be non-digital evidence. There was only one gun mentioned in the application from a post months before J.Z. texted Stanton. What evidence would agents expect to find in Stanton's personal, physical documents? And what connection did Stanton's car or garage have to anything? Eagen noted that, in his experience, "occupants of a residence will often use garages for storage of various items which they don't require immediate or regular access to." Ex. A at 001510. But that's not particularized. That's true of all garages. Eagen said nothing about Stanton's car except that Stanton drove it and carried items into it. *Id.*

The warrant was not particularized. Agent Eagen asserted probable cause of a crime and sought to search all records found in Stanton's home, garage, or car, which required searching through all of Stanton's personal data (physical and digital) in the hopes of

18
Case 2:25-cr-00198-PP-WED   Filed 01/20/26   Page 18 of 19   Document 24

turning up something that might help a prosecution. All of the evidence seized under the warrant should be suppressed. The warrant is so general that the government cannot carry its burden to show that an exception to the exclusionary rule should apply. *United States v. Conklin*, 154 F. Supp. 3d 732, 740–41 (S.D. Ill. 2016) (declining to apply the severability or good faith exceptions).

### III.  CONCLUSION

The Court should dismiss Count 2 because it seeks to prosecute protected speech. And the Court should suppress the evidence seized under the search warrant for Stanton's home, car, and garage because Agent Eagen omitted evidence that defeated probable cause and because the warrant was not particularized.

Dated at Madison, Wisconsin January 20, 2026.

Respectfully submitted,

ANDREW STANTON, *Defendant*

/s/R. Rick Resch
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
William E. Grau
  Wisconsin Bar No. 1117724
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
William@StrangBradley.com